985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald K. CLARK, Defendant-Appellant.
 No. 91-10534.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1992.
Decided Feb. 1, 1993.
 
 Appeal from the United States District Court for the District of Nevada; No. CR-91-00112-PMP, Philip M. Pro, District Judge, Presiding.
 D.Nev.
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
 Before GOODWIN, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ronald Kerry Clark was convicted of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). Clark appeals his conviction on the grounds that he was deprived of constitutionally adequate assistance of counsel and that the prosecutor engaged in misconduct by knowingly using false testimony. He also appeals his sentence of 360 months imprisonment, arguing that the district court erred in applying the relevant enhancement provisions. We affirm Clark's conviction, but reverse his sentence.
 
 I. BACKGROUND
 
 3
 According to testimony elicited at trial, on July 22, 1990, Clark drove past an apartment complex in a white Cadillac, stopped his car, and then fired several shots toward Gloria Garner, a resident of the apartment complex who was standing outside the building. Approximately ninety minutes later, Clark drove up to a Stop & Shop convenience store and parked beside a black Nissan. He entered the store and fired three shots at the driver of the Nissan, Clevester Green.
 
 
 4
 Then, Clark exited the store, walked up to the Nissan, and shot at David Coleman who was sitting in the passenger side of the car. Coleman, raising his arms to shield his face, was struck in the right arm. Clark fired three more shots through the back of the Nissan and then ran across the street. Meanwhile, Coleman retrieved a firearm from the Nissan and fired at Clark as he was attempting to climb over a fence into the backyard of a home, wounding Clark in the left arm. The police found Clark inside the house and transported him to a local hospital.
 
 
 5
 Clark was convicted by a jury for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). At the sentencing hearing on October 17, 1991, the district court determined Clark to be a career offender under U.S.S.G. § 4B1.1 subject to the enhancement provisions of 18 U.S.C. § 924(e)(1). Clark was sentenced to 360 months of imprisonment and five years of supervised release. Clark filed a timely appeal.
 
 II. DISCUSSION
 A. Ineffective Assistance of Counsel Claim
 
 6
 Clark argues that his counsel's failure to request an immunized witness jury instruction constitutes ineffective assistance of counsel. Although claims of ineffective assistance of counsel are generally not addressed on direct review, United States v. Birges, 723 F.2d 666, 670 (9th Cir.), cert. denied, 466 U.S. 943 (1984), the record on appeal is sufficiently developed in this case to permit review. United States v. O'Neal, 937 F.2d 1369, 1376 (9th Cir.1990).
 
 
 7
 To prevail on a claim of ineffective assistance of counsel, Clark must show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness and that his counsel's error prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Strickland establishes a strong presumption that a defense counsel's performance was constitutionally adequate. Id.
 
 
 8
 Clark maintains that an immunized witness jury instruction was critical to his defense because it pertained to David Coleman's uncorroborated testimony about the events that took place at the Stop & Shop convenience store. Coleman was granted immunity from prosecution for any offense related to the shooting incident in exchange for his testifying against Clark. Clark asserts that he would have been entitled to an immunized witness instruction had defense counsel requested one. This, and the fact that Coleman's testimony was uncorroborated, arguably places defense counsel's error below an objective standard of reasonableness. United States v. Bosch, 914 F.2d 1239, 1247 (9th Cir.1990).
 
 
 9
 Nonetheless, Clark's claim fails because he cannot establish that he was prejudiced by the error. To establish prejudice, Clark must show that there is a reasonable probability that the verdict would have been different had an immunized witness jury instruction been given. Strickland, 466 U.S. at 694. Here, Clark would have been convicted of unlawful possession of a firearm even in the absence of Coleman's testimony in view of the evidence presented by Gloria Garner as to the shooting in front of the apartment complex.
 
 B. Prosecutorial Misconduct
 
 10
 A prosecutor has a constitutional duty "to refrain from knowingly presenting perjured testimony and from knowingly failing to disclose 'that testimony used to convict a defendant was false.' " United States v. Aichele, 941 F.2d 761, 766 (9th Cir.1991) (quoting United States v. Endicott, 869 F.2d 452, 455 (9th Cir.1989)). A defendant is therefore deprived of a fair trial " 'when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' " Giglio v. United States, 405 U.S. 150, 153 (1972) (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)). "Furthermore, when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility warrants a new trial irrespective of the good faith or bad faith of the prosecution." United States v. Endicott, 869 F.2d 452, 456 (9th Cir.1989).
 
 
 11
 Clark argues that the prosecutor deliberately deceived the court and the jury by failing to disclose that certain portions of the testimony presented by Coleman were false. First, Clark takes issue with Coleman's testimony identifying the white Cadillac depicted in government exhibits as being the Cadillac which Clark allegedly drove up to the Stop & Shop convenience store. In Coleman's initial statement to the police, he described the Cadillac as being white with a burgundy top. Yet at trial, he stated that the all-white Cadillac depicted in the government's photographs was the same one he had seen on the night of the shooting. In addition, Coleman identified the weapon used by Clark as an automatic weapon in his statement to the police, but at trial he testified that it was a revolver. Clark's contention is that by permitting Coleman to make these statements at trial while knowing that they were inconsistent with his original statements to the police, the prosecutor was deliberately deceiving the jury.
 
 
 12
 Clark's argument is unpersuasive. The Ninth Circuit has previously dealt with similar claims and has squarely rejected them, observing that "[w]ithout knowledge of [which] testimony was false, [the prosecutor] could not have knowingly presented perjured testimony." United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir.1989), cert. denied sub nom. Charley v. United States, 113 S.Ct. 419 (1992); see also United States v. Baker, 850 F.2d 1365, 1371 (9th Cir.1988) ("[T]he record here at most shows only a prior inconsistent statement."). Furthermore, the inconsistencies with Coleman's statements were brought out during cross-examination.
 
 
 13
 Second, Clark contends that false testimony was presented during a discussion of Coleman's previous convictions. During direct examination, Coleman stated that he had a previous conviction for possession of marijuana. In fact, the conviction was for delivery of marijuana. Here, the prosecutor did have an obligation to correct Coleman since there is no doubt as to his prior convictions. Nonetheless, the distinction between "possession" and "delivery" was immaterial to the central questions at issue in the trial and the prosecutor's omission hardly amounts to a constitutional violation. Moreover, defense counsel corrected the mistake during cross-examination.
 
 
 14
 Clark's last argument is that "false testimony" was presented with respect to the events subsequent to the Stop & Shop incident. Coleman testified that he had gone to the hospital after the shooting. But, before going to the hospital, Coleman had gone to the Garner's home to hide the weapon he had used to shoot Clark. The prosecutor did successfully avoid discussing evidence that would have undermined the credibility of Coleman's testimony by failing to raise the issue during his direct examination of Coleman and by raising a relevancy objection when defense counsel tried to discuss it during Garner's cross-examination. However, this does not constitute prosecutorial misconduct. The error was on the part of defense counsel who for some reason did not challenge Coleman with his prior statement to the police during cross-examination as he easily could have done. Clark's conviction is therefore affirmed.
 
 
 15
 C. Career Offender Status Under U.S.S.G. § 4B1.1
 
 
 16
 Clark challenges his designation as a "career offender" under the Sentencing Guidelines. Clark argues, and the government now concedes, that he was erroneously classified as a career offender because the predicate offense, felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is not a "crime of violence" as defined by U.S.S.G. § 4B1.2.
 
 
 17
 In sentencing Clark, the district court presumably relied on United States v. O'Neal, 937 F.2d 1369, 1375 (9th Cir.1990) in finding that the crime of being in possession of a firearm, 18 U.S.C. § 922(g)(1), is a crime of violence. The O'Neal court, however, made its determination under the old version of U.S.S.G. § 4B1.2 which defined "crime of violence" by reference to 18 U.S.C. § 16.[1] On November 1, 1989, the Sentencing Guidelines Commission amended § 4B1.2 by inserting its own definition of "crime of violence." See U.S.S.G.App. C (Amendment 268). Section 4B1.2 now provides that a crime of violence is any offense that
 
 
 18
 i) has as an element the use, attempted use, or threatened use of physical force against th eperson of another, or
 
 
 19
 ii) ... involved conduct that presents a serious potential risk of physical injury to another.
 
 
 20
 U.S.S.G. § 4B1.2(a).
 
 
 21
 In view of the amendment, the Ninth Circuit reconsidered its holding in O'Neal that being a felon in possession of a firearm is a crime of violence for purposes of the career offender enhancement provisions. United States v. Sahakian, 965 F.2d 740 (9th Cir.1992). The Sahakian court observed that the "amendment shifted the emphasis from an analysis of the 'nature' of the crime charged to an analysis of the elements of the crime charged or whether the actual charged 'conduct' of the defendant presented a serious risk of physical injury to another," and concluded that the crime of being a felon in possession of a firearm is not a crime of violence under Amendment 268. Id. at 742; see also United States v. Huffhines, 967 F.2d 314, 321-22 (9th Cir.1992).
 
 
 22
 Clark was sentenced on October 17, 1992, after Amendment 268 came into effect on November 1, 1989, and, accordingly, the holding in Sahakian governs his case. Under the new rule, Clark no longer meets the crime of violence requirement under U.S.S.G. § 4B1.1(2). Clark's classification as a career offender must therefore be reversed, and we need not reach Clark's second argument that the district court erred in calculating his criminal history under U.S.S.G. § 4B1.1(3).
 
 D. Enhancement Under 18 U.S.C. § 924(e)(1)
 
 23
 Finally, Clark argues that his sentence was improperly enhanced under 18 U.S.C. § 924(e)(1) (Armed Career Criminal Act). A question of statutory interpretation is reviewed de novo. United States v. Antonie, 953 F.2d 496, 497 (9th Cir.1991), cert. denied, 113 S.Ct. 138 (1992).
 
 
 24
 Section 924(e)(1) requires the imposition of a mandatory minimum sentence of fifteen years for individuals convicted of possession of a firearm who have three previous convictions for violent felonies. The predicate offenses at issue are: 1) a kidnapping, robbery, and sexual assault committed on December 22, 1978; 2) a robbery committed on January 26, 1979; and 3) a burglary committed on April 2, 1979. Clark pleaded guilty to the robbery and was convicted for the other two crimes in a consolidated trial. Clark argues that the two offenses that were consolidated for trial should only count as one conviction for purposes of § 924(e)(1).
 
 
 25
 Clark's contention has no merit. The express language of § 924(e)(1) makes consolidation for trial immaterial in determining what constitutes a prior conviction, requiring only that the violent felony convictions be "committed on occasions different from one another." Consequently, the Ninth Circuit has adopted a "separate and distinct criminal episode" test to determine whether a defendant is subject to the enhancement provisions of § 924(e)(1). See Antonie, 953 F.2d at 499 (1991). In Antonie, the court found two armed robberies committed only forty minutes apart to be "separate and distinct criminal episodes" and therefore required them to be tallied as separate convictions under § 924(e)(1). Id.
 
 
 26
 Here, Clark's two underlying crimes were clearly "separate and distinct criminal episodes." Each occurred at a different place and time, and involved a different victim. The fact that the two crimes were consolidated for purposes of trial does not render them a single criminal transaction. Thus, the district court's application of 18 U.S.C. § 924(e)(1) was proper.
 
 
 27
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 18 U.S.C. § 16 defines a crime of violence as:
 a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
 b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.